UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT, RECOMMENDATION**
                                             **and ORDER**
v.

ANTWAN HUGLEY,                               15-CR-115(EAW)(JJM)

                         Defendant.
_____

      Defendant Antwan Hugley is charged in a seven-count Second Superseding

Indictment [93][1] with various controlled substances, firearms and identity theft charges.

Before me are defendant's pretrial motions [84, 92, 97] and the government's cross-motion for

reciprocal discovery. Government's Response [96], p. 30. Oral argument was held on

September 18, 2017 [98], and at that time I directed the parties to provide me with certain

discovery [99] to review.    For the following reasons, I recommend that defendant's dispositive

motions be denied. I further order that defendant's non-dispositive motions be granted in part

and denied in part, and that the government's cross-motion be granted.


**BACKGROUND**

      Along with co-defendant Trammel Bishop, defendant was initially charged in a

June 5, 2015 two-count Indictment [1] with a cocaine distribution conspiracy, in violation of  21

U.S.C. §846, and with possession with intent to distribute and to distribution of cocaine,  in

violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) and 18 U.S.C. §2.   The Indictment

identified defendant by a single alleged alias, "Twan". Id. Defendant remained a fugitive until

his arrest on or about June 29, 2016 [47].  Thereafter, he filed an initial pretrial omnibus motion

---

[1]        Bracketed references are to the CM/ECF docket entries.

[84] directed at the Indictment. Before the government's deadline to respond to that motion, a Superseding Indictment [86] was returned against defendant, which added two counts of attempted possession of cocaine with intent to distribute in August 2013 and September 2015, in violation of 21 U.S.C. §846 and 18 U.S.C. §2, and one count of identity theft, in violation of 18 U.S.C. §§1028(a)(7) and 1028(b)(3)(A). The Superseding Indictment also identified defendant by additional aliases, including "Anthony Carter" and "Juan Luis Rodriquez-Martinez", and added forfeiture allegations. Id. Since the Superseding Indictment added charges, I permitted defendant to file a supplemental pretrial motion, and set a deadline for the government's response. *See* Third Amended Scheduling Order [89].

After defendant filed his supplemental pretrial motion [92], the government again returned a new indictment before the deadline for its response. The Second Superseding Indictment [93] added counts for possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C §§924(c)(1)(A)(i) and 2 (id., Count 3), and being a felon in possession of a firearm, in violation of 18 U.S.C §§922(g)(1) and 924(a)(2). Id., Count 4. Because of the additional counts, I gave defendant another opportunity to file a supplemental pretrial motion by August 7, 2017, but none was filed. *See* Fourth Amended Scheduling Order [95], ¶2. Instead, following the government's response [96] to his pretrial motions, on the deadline for his reply defendant filed a "Reply/Supplemental Notice of Motion" [97] seeking some new forms of relief.

Following the September 18, 2017 oral argument, defendant's counsel learned that not all of the discovery produced by the government had been provided to him by defendant's former counsel.[2] After the missing discovery was produced by the government, I held a conference with the parties on October 5, 2017. Since defendant did not have the benefit

---

[2]      All pretrial motions were filed by John Parrinello, Esq., who replaced Dominic Saraceno, Esq. shortly before the return of the Superseding Indictment.

of that discovery when he filed his pretrial motions, I gave defendant the option of filing a supplemental motion.  Defendant declined that opportunity, and his pretrial motions were taken under advisement at that time.

## ANALYSIS

A.      **Defendant's Pretrial Motions**

1.      **Motion for an Amended Rule 12(b)(4)(B) Notice**

Fed. R. Crim. P. ("Rule") 12(b)(4)(B) provides that "the defendant, may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16".  Pursuant to that Rule, the government represents that it "intends to use all items of evidence that defendant has been provided with or been made aware of".  Government's Response [96], p. 10.  Defendant argues that such notice is insufficient and requests "a far more specific notice of the government's intent to use in its direct case any evidence which is discoverable pursuant to Rule 16".  Parrinello Affirmation [84], ¶¶51-52, 54(K).  He contends that "[t]he defense should not be expected to review multiple . . . pages [of] discovery and guess what the government intends to introduce during its direct case". Id., ¶54(K).

"Rule 12(b)(4)(B) is not designed or intended to be used to obtain more specific discovery than that provided by Rule 16.  It is also not designed to aid the defendant in ascertaining the Government's trial strategy. Instead, Rule 12(b)(4)(B) is intended to facilitate efficient suppression motion practice by allowing the defendant to avoid filing a motion to suppress when the Government does not intend to use the evidence at issue."  United States v. Koschtschuk, 2010 WL 584018, *10 (W.D.N.Y. 2010); United States v. Barret, 824 F. Supp. 2d

419, 459–60 (E.D.N.Y. 2011). Given the purpose of the rule, I find no basis for the government to more specifically identify the evidence that it intends to use in its direct case at trial. To do so would necessarily aid defendant in ascertaining the government's trial strategy.

Defendant's reliance on United States v. Washington, 819 F. Supp. 358 (D. Vt. 1993) does not compel a different result. There, the court indicated that "it may be inclined" to direct the government to inform the defense of any discrete material that it did not intend to use at trial if the defendants could make a specific showing that they were overwhelmed by voluminous discovery (*i.e.*, "discovery materials which filled several large rooms"). Id. at 368-69. By contrast, the discovery produced here appears to be relatively discrete, and it should be evident to defendant what evidence, if any, he may seek to suppress. For example, the government states that it has produced two 18 U.S.C. §2703(d) applications and orders, two buccal swab search warrants, and the applications and search warrants for defendant's phones. Government's Response [96], p. 4. The government has also informed defendant that it unaware of any statements he made to law enforcement following his arrest or "of any identification procedures conducted with individuals who lacked an independent basis to recognize the defendant". Id., pp. 27-28. Equipped with that information, it should not be a mystery for defendant to identify which evidence, if any, he may seek to suppress. Therefore, this motion is denied.

### 2  Motion to Suppress Statements

Without identifying any specific statement, defendant moves to suppress any and all statements that the government intends to use in its direct case and seeks a hearing on this issue. Parrinello Affirmation [84], ¶¶142-148. Even assuming that defendant had sought to

suppress a specific statement, it has long been settled law that a motion seeking a suppression hearing must be accompanied by an affidavit from someone having personal knowledge of the facts justifying the hearing. *See* United States v. Gillette, 383 F.2d 843, 848–49 (2d Cir. 1967) ("[t]he affidavit submitted for appellant is insufficient in that it does not . . . allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct"); United States v. O'Neill, ___F. Supp.3d___, 2017 WL 1063483, *3 (W.D.N.Y. 2017) ("[a] court may refuse to hold an evidentiary hearing where the defendant fails to provide factual allegations from a witness with personal knowledge"); United States v. Carter, 2012 WL 4721117, *2 (W.D.N.Y.), adopted, 2012 WL 4713900 (W.D.N.Y. 2012) ("without a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be presented by the moving papers").

Ignoring this longstanding requirement, which is expressly set forth in all of my Scheduling Orders [52, 78, 83, 89, 95], defendant supports his motion only with the declaration of his attorney, which "regardless of its content . . . is inadequate to create a factual dispute requiring a hearing because [they are] not based on the attorney's personal knowledge of the underlying facts". United States v. Townsend, 2016 WL 3562055, *3 (E.D.N.Y. 2016). Moreover, the government states that it is "not aware of any statement by the defendant to law enforcement following his arrest". Government's Response [96], p. 27.

Based on the government's representation and defendant's failure to identify any specific statement that he seeks to suppress or to support the motion with an affidavit (or declaration) from an individual with personal knowledge identifying a basis for suppression, I recommend that this motion be denied without a hearing. *See* United States v. Garcia, 2013 WL

5954688, *2 n. 7 (D. Minn.), adopted, 2013 WL 5954687 (D. Minn. 2013) ("[b]ecause

Defendants have not identified any specific statements they made that they believe should be

suppressed, and have offered no factual or legal grounds for suppression, the Court could

recommend denying Defendants' Motions to Suppress Statements . . . solely on th[at] basis").


**3.      Motion to Suppress Identification**

"If there is a very substantial likelihood of irreparable misidentification [from a

pretrial identification], the judge must disallow presentation of the evidence at trial." Perry v.

New Hampshire, ___U.S. ___, 132 S.Ct. 716, 720 (2012). Determining whether a witness will

be permitted to "identify the defendant at trial normally requires a one-step or two-step inquiry.

The first question is whether the pretrial identification procedures were unduly suggestive of the

suspect's guilt. If they were not, the trial identification testimony is generally admissible without

further inquiry into the reliability of the pretrial identification. In that circumstance, any question

as to the reliability of the witness' identifications goes to the weight of the evidence, not its

admissibility." United States v. Maldonado–Rivera, 922 F.2d 934, 973 (2d Cir. 1990).

"A defendant may not baldly request a hearing into the admissibility of pretrial

identification evidence - commonly known as a Wade hearing. To be entitled to a hearing, a

defendant must instead allege facts supporting his contention that the identification procedures

used were impermissibly suggestive. A threshold showing of suggestiveness is necessary in

order to trigger a Wade hearing." United States v. Williams, 2014 WL 144920, *1 (S.D.N.Y.

2014).

Defendant moves for a hearing "to determine whether or not the procedure(s)

were suggestive". Parrinello Affirmation [84], ¶¶149-51. The only identification he specifically

addresses relates to the October 2015 recovery of an unclaimed bag containing cocaine from a Greyhound bus at the Canadian border. As described in the law enforcement reports attached to defendant's pretrial motion [84-4], an individual who identified himself as "Anthony" – an alleged alias of defendant – twice inquired about the bag at the Greyhound bus terminal in Buffalo. As part of the investigation, a Greyhound employee was shown a photo lineup of six individuals, including defendant, but the employee did not identify any of those individuals as the "Anthony" who inquired about the bag. Id., pp. 3-4 of 7.

The government states that it does not allege that defendant was the "Anthony" who inquired about the unclaimed bag containing cocaine. Government's Response [96], p. 28, n. 6. It also represents that it "is unaware of any identification procedures conducted with individuals who lacked an independent basis to recognize defendant". Government's Response [96], p. 28. Specifically, it states that the cooperating witnesses, who identified defendant, "had extensive and direct interactions with [him]". Id.

Without pointing to a specific pre-trial identification made of defendant that he seeks to suppress or a threshold showing of suggestiveness, defendant has not established his entitlement to a pre-trial identification hearing. See Williams, 2014 WL 144920, *1; United States v. Salomon-Mendez, 992 F. Supp. 2d 340, 343 (S.D.N.Y. 2014). Additionally, the government's representations of the independent reliability of the identifications stand unrebutted. Salomon-Mendez, 992 F. Supp. 2d at 344. Therefore, I recommend that this motion be denied without a hearing.

## 4. Motion to Suppress Evidence

Defendant alleges that "[t]hroughout the Discovery materials the government refers to several items seized from defendant and others. I need a specific list of the items referred to". Parrinello Affirmation [84], ¶152. Although his motion is captioned as seeking suppression of evidence, in the body of the motion defendant does not move for suppression of any specific evidence at this time, but rather reserves his right "to move in limine regarding said items". Parrinello Affirmation [84], ¶154.

The government's response includes an itemized list of the discovery it has produced to date. Government's Response [96], pp. 2-4, ¶¶a-mm. From that list, it is difficult to discern what information defendant is lacking to determine whether to move for suppression. Therefore, I recommend that this motion be denied, without prejudice to the possibility of defendant seeking leave to file a motion to suppress in the future upon a showing of good cause for why it was not timely asserted. *See* Rule 12(c)(3).

## 5. Motion for a Bill of Particulars

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).[3] "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is

---

[3] As the government notes, some courts have questioned the double jeopardy justification for granting particularization. *See* United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985), aff'd, 768 F.2d 487 (2d Cir.1985).

accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon

defendant[ ] to show that non-disclosure of the requested particulars would lead to prejudicial

surprise at trial or would adversely affect defendant['s] rights". United States v. Duarte, 2014

WL 29366, *1 (W.D.N.Y. 2014).

   "In deciding a motion for a bill of particulars, the important question is whether

the information sought is necessary, not whether it is helpful." United States v. Conley, 2002

WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence,

witnesses, and legal theories to be offered by the Government at trial or as a general investigative

tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

However, "if necessary to give the defendant enough information about the charge to prepare his

defense, '[a bill of particulars] will be required even if the effect is disclosure of evidence or of

theories.'" United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998) (quoting 1 Charles Alan

Wright, Federal Practice and Procedure §129 (1982)).

   The court "has the discretion to deny a bill of particulars if the information sought

by defendant is provided in the indictment or in some acceptable alternate form". Barnes, 158

F.3d at 665; United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("In determining

whether a defendant has shown such necessity, the trial court must examine the totality of the

information available to the defendant, including the indictment and general pre-trial

discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the

district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir.1984).

### a.    Count 1

Defendant seeks particularization of Count 1 of the Second Superseding Indictment, which alleges that "[b]etween in or about 2010 . . . and on or about June 29, 2016, in the Western District of New York, and elsewhere, . . . defendant . . . did knowingly, willfully and unlawfully combine, conspire and agree with others, known and unknown, to . . . possess with the intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine",  all in violation of 21 U.S.C. §846.  Concerning that count, defendant seeks the following particularization:

- "the date when Defendant is alleged to have become a member of the alleged conspiracy";

- "the manner in which Defendant became a member of the alleged conspiracy";

- "who the other known members of the alleged conspiracy, indicted and unindicted, were/are";

- "the substance of Defendant's conduct during the conspiracy giving dates, times, places, and the substance of Defendant's conduct and statements in furtherance of the conspiracy which the government intends to present in their case-in-chief";

- "the sum and substance of the conspiratorial agreement";

- "the object of the conspiracy";

- "whether defendant withdrew from the conspiracy in word and/or conduct, if so when";

- "whether defendant conspired with others to possess with the intent to distribute cocaine, if so, when, how much, and with whom";

- "who the 'others, known…,' are beside defendant and Bishop and what each other person's role was in the alleged conspiracy";

- "exactly how much cocaine was possessed as a result of the conspiracy";

- "where the controlled substances seized as a result of the conspiracy are being held and when the [defense] can inspect the controlled substances, weigh them, and have them tested";

- "when in 2011 the conspiracy began and with whom"; and

- "what 'and elsewhere' refers to." Parrinello Affirmation [84], ¶¶15-28.

        In opposing defendant's motion, the government argues that "[t]he government has already provided substantially all of the discovery in its possession, including the relevant DEA reports that provide the basis for this case" Government's Response [96], p. 8.  It also notes that certain portions of the particularization sought is not within the proper scope of a bill of particulars. Id., p. 9.

        "[T]here is a special concern for particularization in conspiracy cases." United States v. Palmer, 2012 WL 2953659, *3 (W.D.N.Y. 2012) (citing United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988)). Thus, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge". Barnes, 158 F.3d at 666.

        Although the Second Superseding Indictment provides few details of the conspiracy, which is alleged to have spanned approximately six years, it does not appear to be a complex conspiracy, nor does defendant argue that it is.  Permitting defendant to sufficiently prepare for trial, the government identifies the pretrial discovery that has been provided to defendant (government's Response [96], pp. 2-4) – some of which defendant did not have at the time it sought this relief.   Defendant argues that the "redactions of critical information" from that discovery "causes the defense to guess what the government intends to offer at trial". Parrinello Affirmation [84], ¶53.  Specifically, he points to the redactions concerning the "names of those involved in the stop search and arrest in Goodbee, LA on December 11, 2011", "[t]he arrest of co-defendant Bishop and Crystal Burns in Harris County, Texas on or about August 13, 2013", and  the "cocaine seized from the bus on or about October 1, 2015".  Id.  My review of

those documents [84-2 – 84-5], demonstrate that many of the redactions appear to mask the identity of co-conspirators and witnesses to the various incidents, confirming what the government represented at oral argument. However, defendant has not established his entitlement to that information.

"[I]n assessing whether a bill of particulars revealing the names of unindicted co-conspirators would accomplish the permissible goals of providing a defendant with necessary information to prepare for trial and avoid surprise, courts in this Circuit have routinely evaluated six factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation." United States v. Kahale, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009), aff'd sub nom, 477 Fed. App'x 818 (2d Cir. 2012) (Summary Order); United States v. Nachamie, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000). Although some of these factors weigh in favor of disclosure, given the prior representations by the government that it has videotape evidence that an unknown individual "attempted to kill a cooperator in this case shortly after that individual pled to a separate indictment" (government's Memorandum of Law in support of its appeal of defendant's release order [55], p. 10), I am very reluctant to require the government to identify these individuals at this time.

The remaining expansive particularization defendant seeks is also not of the type to which he is entitled. "As a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly." United States v. Feola, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), aff'd, 875 F.2d 857 (2d Cir. 1987); United States v. Mullen, 243 F.R.D.

54, 62 (W.D.N.Y. 2006) ("as the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a drug trafficking conspiracy charge").  Thus, "[i]t is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." Feola, 651 F.Supp. at 1132.

Nor must the government "specify when a particular defendant joined the conspiracy, nor is it required to specify what role each defendant played in the conspiracy. . . . Similarly, to the extent that defendants seek a description of the particular acts for which he or she is being held responsible, or a listing of the acts of which each defendant had knowledge, the case law is clear that the government is not required to provide the information." United States v. James, 2007 WL 914242, *26 (E.D.N.Y. 2007).  *See* United States v. Nicolo, 523 F. Supp. 2d 303, 317 (W.D.N.Y. 2007), aff'd, 421 Fed. App'x 57 (2d Cir. 2011) (Summary Order) ("[a]s a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars.  More specifically, details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial"); United States v. Montalvo, 2014 WL 3894377,  *11 (W.D.N.Y.), adopted, 2014 WL 3894383 (W.D.N.Y. 2014) ("much of what defendants seek, including '[h]ow the co-defendants . . . knowingly, willfully and unlawfully combined, conspired, and agreed together to commit the acts set forth in the Indictment'. . . a '[l]ist of the uncharged overt acts taken' . . . whether persons acting for the government were present during the overt acts . . .  the dates the defendants joined and withdrew from the alleged conspiracy . . .  'the name of all individuals from whom the government alleges Defendant distributed cocaine' . . . '[t]he exact ...

quantity of controlled substances alleged to be in possession of Defendant ... during the alleged conspiracy' . . . and 'the exact number of times Defendant ... distributed controlled substances during the alleged conspiracy' . . . are not the proper subject of a bill of particulars"); <u>United States v. Chen</u>, 2007 WL 2244213, *10 (S.D.N.Y. 2007) ("requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged" have been "routinely denied").

### b.  Count 5

Defendant seeks particularization of Count 5 of the Second Superseding Indictment [93],[4] which alleges that "[o]n or about December 9, 2014, in the Western District of New York, the defendant . . . did knowingly, intentionally and unlawfully possess with the intent to distribute, and distribute, cocaine", in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C), and 18 U.S.C. §2.  He seeks the following particularization of that count:

- "the amount of cocaine allegedly possessed by defendant";

- "where defendant is alleged to have possessed the quantity of cocaine";

- "to whom the defendant is alleged to have distributed the cocaine";

- "when and where the alleged meeting(s) between defendant and the purchasers of the cocaine took place";

- "the matter and means that the alleged conversation(s) between defendant and the alleged purchaser(s) of cocaine took place";

- "whether there were any third parties present during the alleged distribution of cocaine between the defendant and the purchaser . . . , if so who";

- "whether or not during the alleged meeting(s) between defendant and the alleged purchaser(s) of the cocaine . . . were recorded in anyway";

---

[4]      Defendant's motion [84] references Count 2 of the Indictment.  Parrinello Affirmation [84], p. 8.  Since that is no longer the operative pleading, I have treated defendant's motion as addressing Count 5 of the Second Superseding Indictment [93], which contains the same charge.

- "whether or not the alleged meeting(s) between the purchaser(s) and the defendant . . . was captured on video";

- "whether or not after the alleged meeting on December 9, 2014, between defendant and the alleged purchaser that the alleged purchaser then met with agents of the DEA and investigators"; and

- "whether or not there were any phone calls and/or text messages between the defendant and the purchaser(s) prior to the alleged possession and/or distribution of the cocaine on or before December 9, 2014, if so state specifically the telephone numbers utilized during the phone call and/or text messaging." Parrinello Affirmation [84], ¶¶32-41.

I conclude that defendant is not entitled to particularization of this count. The Second Superseding Indictment contains the date, location and substance of the conduct that is alleged. When that information is coupled with the discovery produced - discovery that defendant does not contend fails to address the December 9, 2014 incident - I conclude that defendant is sufficiently apprised to permit him to prepare for trial and to prevent surprise.

### c.    Counts 3 and 4

For the first time in his reply [97] defendant seeks particularization of the firearms allegations contained in the Second Superseding Indictment. Supplemental Parrinello Affirmation [97], ¶¶29-32, 35. Since that motion is untimely and unaccompanied by any showing of cause why it could not have been filed by the August 7, 2017 deadline (*see* Fourth Amended Scheduling Order [95], ¶2), it is denied.

In any event, even it were timely filed, it would be denied. With respect to Count 3, charging defendant with possession of firearms in furtherance of drug trafficking between December 2011 and in or about February 2014, he seeks the following:

- "[w]here else did the alleged possession of firearms take place";

- "[w]hat date or dates did the possession of firearms take place";

- "[w]hat type of firearm"; and

- an explanation of what is meant by the allegation in the Count 3 that "in furtherance of drug trafficking crimes . . . committed in the manner set forth in Counts 1 and 2 of this Second Superseding Indictment, the allegations of which are incorporated herein by reference, did knowingly and unlawfully possess firearms". Parrinello Supplemental Affirmation [97], ¶¶29-32.

Defendant fails to demonstrate (either legally or factually) his entitlement to these items of particularization. *See* United States v. Calvente, 2013 WL 4038952, *1 (S.D.N.Y. 2013) (denying request for particularization of a §924(c) charge, including "the dates, times, and locations that each defendant possessed firearms"); United States v. Mason, 2007 WL 541653, *4-5 (S.D.N.Y. 2007) (denying particularization where "[t]he superseding Indictment reveals that this case is a generic narcotics conspiracy, wherein firearms were used to further narcotics trafficking" and "[d]efendants seek 'the very sorts of information with respect to which courts routinely deny requests for particularization'").

With respect to Count 4, which alleges that on February 3, 2014 defendant, a felon, was in possession of a firearm and ammunition (namely, one Kimber, model Pro TLE/RL II, .45 caliber semi-automatic handgun, bearing serial number KR38242, and 16 rounds of .45 caliber ammunition), defendant seeks particularization of whether that count resulted in a search of him. If so, defendant argues that the government "should be obligated to provide more details than [are] provided in the Second Superseding Indictment". Parrinello Supplemental Affirmation [97], ¶35. At oral argument, defendant clarified that the need for particularization of this count stemmed from the fact that the firearm that is the subject of the count was not recovered from defendant's vehicle as the government represented in its appeal of my release

order ([55], pp. 9-10), but rather from 93 Martha Avenue as reflected in the some of the law enforcement reports. Since this was a new issue, I directed defendant to provide me with all law enforcement reports concerning Count 4 of the Second Superseding Indictment [99]. Having reviewed those materials [102], they make clear that on February 3, 2014 defendant and his wife were encountered by law enforcement in a vehicle parked outside of 93 Martha Avenue, and that the firearms were recovered from that vehicle, not from 93 Martha Avenue. Therefore, this motion is denied.


6.     **Rule 16 Discovery**

          "Rights of discovery in criminal cases, unlike in civil cases, are severely circumscribed." BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon, 1995 WL 489426, *4 (S.D.N.Y. 1995). Apart from the government's Brady,[5] Giglio,[6] and Jencks Act (18 U.S.C. §3500) obligations, which are addressed separately, "Rule 16 is . . . the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery in criminal cases". United States v. Louis, 2005 WL 180885, *2 (S.D.N.Y. 2005). Defendant moves pursuant to Rule 16 for various forms of discovery. Parrinello Affirmation [84], ¶¶54(a)-(CC), ¶¶79-90; Parrinello Supplemental Affirmation [92], ¶¶43-44 Since some of the requests exceed the scope of Rule 16, I will individually address the categories of discovery permitted by that Rule.

---

[5]          Brady v. Maryland, 373 U.S. 83 (1963).
[6]          Giglio v. United States, 405 U.S. 150 (1972).

### a.      Defendant's Statements

The government represents that it "is not aware of any such statements". Government's Response [96], p. 14.   I have no reason to question the government's uncontested representations.  *See* United States v. Upton, 856 F. Supp. 727, 746 (E.D.N.Y. 1994) ("[t]o the extent that the government represents that it 'has produced every document in its possession which relates in any way to this case' . . .  the court must assume the veracity of that representation. The alternative to such an assumption would require the court to examine numerous file drawers of documents to verify that representation which is as obviously undesirable as it is impractical"); United States v. Johns, 336 F.Supp.2d 411, 424 (M.D.Pa. 2004) ("[t]he court is entitled to rely on the representations of counsel, as officers of the court"). Therefore, this request is denied.


### b.      Prior Criminal Record

The government represents that it "has already provided defendant's criminal history".  Government's Response [96], p. 15.  I have no reason to question the government's uncontested representations.  *See* Upton, 856 F. Supp. at 746; Johns, 336 F.Supp.2d at 424. Therefore, this request is denied.


### c.      Documents and Objects

The government represents that it has produced "any document and objects that [it] would anticipate using in its case-in-chief at trial, is material to preparing a defense, or was obtained from the defendant".  Government's Response [96], p. 15.  I have no reason to question

the government's uncontested representations.  *See* <u>Upton</u>, 856 F. Supp. at 746; <u>Johns</u>, 336 F.Supp.2d at 424. Therefore, this request is denied.

### d.        Reports of Examinations and Tests

The government represents that  it "has already turned over laboratory reports to the defendant".  Government's Response [96], p. 15.   I have no reason to question the government's uncontested representations.  *See* <u>Upton</u>, 856 F. Supp. at 746; <u>Johns</u>, 336 F.Supp.2d at 424.  Therefore, this request is denied.

### e.        Expert Witnesses

The government represents that it  will provide a "written summary of any testimony that the government intends to use under Rules 702, 703 and 705  of the Federal Rules of Evidence during its case-in-chief at trial once the matter is scheduled for trial."  Government's Response [96], p. 15. Any disclosures pursuant to Rule 16(a)(1)(G) shall occur no later than 30 days before trial, or as otherwise directed by the trial judge.  *See* <u>United States  v. Lino</u>, 2001 WL 8356, *21 (S.D.N.Y. 2001) ("this Court directs that the Government provide expert witness disclosure to defendants thirty days before trial").

### 7.        Motion for <u>Brady</u>/<u>Giglio</u> Material

Defendant moves for disclosure of <u>Brady</u>/<u>Giglio</u> materials immediately, but in no event later than one month in advance of trial.  Parrinello Affirmation [84], ¶¶55-70.  The government acknowledges its continuing duty under <u>Brady</u> "to produce such material, if and when it is aware of it".  Government's Response [96], p. 16.  However, it argues that "[t]he

Brady doctrine does not cover many of the requests made by the defendant". Id., p. 17. In reply, defendant does not identify any specific request that he believes falls within Brady, but has not been produced.   With respect to Brady impeachment material, the government agrees to produce such material "in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act material". Id., p. 18.

"The government's obligations under Brady . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio, 405 U.S. at 154).  "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant".  Id. at 146.  "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Id. at 144.  "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case".  Id. at 146.

Based upon the government's representations, defendant's motion is denied. Consistent with Coppa, the government shall timely disclose Brady and Giglio materials to defendant.  See United States v. Hill, 2012 WL 912948, *5 (W.D.N.Y. 2012).

**8.     Motion for Early Disclosure of Jencks Act (18 U.S.C. §3500) Material**

Defendant moves for disclosure of Jencks Act material "immediately, but in no event later than one . . . month prior to the trial" and identifies a list of items he contends fall with the scope of Jencks.  Parrinello Affirmation [84], ¶¶71-72(a)-(j).

"Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material."  United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010).  *See* Coppa, 267 F.3d  at  145 (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); In re United States, 834 F.2d 283, 287 (2d Cir. 1987) ("as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act"); United States v. Parris, 2014 WL 2745332, *14 (S.D.N.Y. 2014) ("The Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"); United States v. Scott, 2015 WL 1525580, *4 (D. Conn. 2015) ("The Second Circuit has consistently held that a district court's 'power to order pretrial disclosure is constrained by the Jencks Act,' and that the district court may not order advance disclosure inconsistent with the Jencks Act itself").  Nonetheless, the government agrees to produce any Jencks Act material no later than two weeks prior to the commencement of trial or as ordered by the District Court.  Government's Response [96], p. 19.

At this time, I have no reason to believe that the government will not act reasonably and in good faith with respect to its Jencks Act obligations.  I also have no reason to question whether the government understands its Jencks Act obligations.  With the exception of defendant's request for "[a]ny notes and memoranda made by government counsel during the

interviewing of any witness intended to be called by the government in their direct case" (Parrinello Affirmation [84], ¶72(e)), the government does not dispute the items identified by defendant as falling within the scope of its Jencks Act obligations. Government's Response [96], p. 19. With respect to the disputed request, I agree with the government that it falls outside the scope of the Jencks Act, unless the notes and memorandum by government counsel were signed or otherwise adopted or approved by potential government witnesses. *See* United States v. Weaver, 992 F. Supp. 2d 152, 159 (E.D.N.Y. 2014). Therefore, based on the government's representations, this motion is denied.


### 9. Motion for Relief *in Limine*

Defendant moves for notice of Fed. R. Evid. 404(b), 607, 608, and 609 material at least one month prior to trial. Parrinello Affirmation [84], ¶¶73(A)-(B). In response, the government represents that it will disclose "evidence in its possession which might fall within the ambit of Rules 404(b), 607, 608, and 609, and will provide notice of its intention to rely upon such evidence at the time it is ordered to do so by the trial court", but notes that it "has no obligation to provide a defendant with any information that could be used to impeach him pursuant to Rule 608, should he elect to testify". Government's Response [96], p. 20. I agree with the government. *See* United States v. Barnett, 2009 WL 1044559, *2 (W.D.N.Y. 2009) ("[t]he government has no obligation to provide the defendants with notice of any material that will be used to impeach him pursuant to Rule 608 should he elect to testify"). Based on the government's representations, this portion of defendant's motion is denied.

Defendant also seeks a pretrial hearing to determine the admissibility of any such evidence. Parrinello Affirmation [84], ¶¶73(A)-(B). However, the issue of admissibility of such

evidence "is best left to the determination of the trial judge at the time of trial". United States v. Hill, 2012 WL 1144541, *6 (W.D.N.Y. 2012). Therefore, this portion of the motion is denied, without prejudice to renewal before the trial judge.

Defendant further seeks notice pursuant to Fed. R. Evid. 801(d)(2)(E) of the "government's intent to offer in its case-in-chief all co-conspirator statements" and for a pretrial determination of the admissibility of any such statements. Parrinello Affirmation [84], ¶¶73(C)-(D). As the government notes, "[t]here is no legal authority for this request". Government's Response [96], p. 19, n. 3. "Rule 801(d)(2)(E) of the Federal Rules of Evidence does not contain a required pretrial notice and therefore, there is no requirement on the part of the government to disclose statements made by a defendant's co-conspirator during and in furtherance of the conspiracy." United States v. De Leon-Navarro,  2012 WL 2254630, *2 (W.D.N.Y. 2012). Therefore, defendant's motion is denied to the extent it seeks such notice and since the admissibility of any such statements is best addressed by the trial judge, that portion of the motion is denied, without prejudice to renewal before the trial judge.


10.     **Motion for Preservation of Rough Notes**

Defendant seeks an order directing law enforcement to preserve notes taken as part of their investigation, regardless of whether or not the notes are incorporated into official records. Parrinello Affirmation [84], ¶¶74-78.   In response the government, obliquely represents that "[a]ppropriate instructions will be given to the agents involved in the investigation regarding the preservation of evidence", but argues that "the notes of a government agent which were later incorporated into a written report need not be preserved or produced" and that "even if retained,

rough notes are not discoverable, even as Jencks Act material". Government's Response [96], pp. 21-22.

While I agree with the government that "precedent in this circuit holds that [law enforcement agents] need not preserve such notes if the agents incorporate them into formal reports" United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988), I disagree that rough notes are not discoverable. For that proposition the government relies upon United States v. Koskerides, 877 F.2d 1129, 1133 (2d Cir.1989). Government's Response [96], p. 22. That reliance is misplaced. In Koskerides, the Second Circuit did not hold that handwritten notes would never be subject to production under the Jencks Act. Instead, it found no error in the district court's procedure of reviewing handwritten notes *in camera* to determine whether they must be disclosed as Jencks Act material. *See* United States v. Rio, 1997 WL 627548, *4 (N.D.N.Y. 1997). Therefore, defendant's motion is granted in part, and the government is directed to "take steps to preserve any rough notes taken by law enforcement officials during the investigation of this matter that have not been incorporated into final written reports". United States v. Nguyen, 2007 WL 1111237, *8 (W.D.N.Y. 2007).


**11. Motion for Disclosure of Grand Jury Minutes**

Defendant moves for disclosure of the grand jury minutes or for my *in camera* review of those materials "to determine whether a motion to dismiss on prosecutorial misconduct grounds, or other grounds, is appropriate". Parrinello Affirmation [84], ¶¶91-101. In response, the government argues that defendant fails to "make any specific, factual allegation of either prosecutorial misconduct or impropriety before the Grand Jury which would entitle him to disclosure of the grand jury transcripts". Government's Response [96], p. 26.

While "grand jury proceedings are subject to strict secrecy requirements", <u>United States v. R. Enterprises, Inc.</u>, 498 U.S. 292, 299 (1991), that secrecy is not absolute. Rule 6(e)(3)(E)(ii) permits disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury". Therefore, "the standard for dismissing an indictment is relevant to the standard for disclosure of grand jury materials". <u>United States v. Way</u>, 2015 WL 8780540, *4 (E.D. Cal. 2015). Importantly, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." <u>United States v. Calandra</u>, 414 U.S. 338, 345 (1974). However, courts may "dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions". <u>United States v. Williams</u>, 504 U.S. 36, 46 (1992).

Since "a presumption of regularity attaches to grand jury proceedings" <u>United States v. Leung</u>, 40 F.3d 577, 581 (2d Cir. 1994), defendant has the "burden of asserting that *particularized and factually based grounds* exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment". <u>United States v. Abcasis</u>, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992) (emphasis added). *See also* <u>Leung</u>, 40 F.3d at 582 ("[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct"). This standard is "'demanding.'" <u>United States v. Hernandez</u>, 2015 WL 738697, *1 (D. Colo. 2015). The "strong presumption of regularity in grand jury proceedings . . . . cannot be outweighed by conclusory or speculative allegations of misconduct". <u>United States v. Morgan</u>, 845 F. Supp. 934, 941 (D. Conn. 1994), <u>aff'd</u>, 51 F.3d

1105 (2d Cir. 1995). *See* United States v. Sandford, 2016 WL 791435, *4 (W.D.N.Y.), adopted, 2016 WL 3951217 (W.D.N.Y. 2016) ("[u]nspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden"). Given this demanding standard, which applies equally to requests for *in camera* inspections of grand jury materials,[7] "[d]isclosure . . . will be denied in all but extraordinary circumstances". Morgan, 845 F. Supp. at 941.

Defendant's motion, which lacks any particularity or factual support, falls far short of meeting that standard. Therefore, this motion is denied.


### 12.    Motion for Identification of Informants and Others

Defendant seeks the identity of a variety of individuals referenced by the government in its appeal [55] of my release order, including "mules", his "crew", and cooperators. Parrinello Affirmation [84], ¶¶105-128.[8] In response, the government argues that defendant has not established his burden of demonstrating a particularized need for the disclosure of any informant's identity. Government's Response [96], p. 12. It also argues that the defendant's burden is heightened because of the drug-related nature of the case and that safety concerns outweigh defendant's generalized claims of need. Id., pp. 12-13.

---

[7]     *See* United States v. Vaughan, 2010 WL 3025648, *3 (S.D.N.Y. 2010); United States v. Laster, 2007 WL 3070599, *1 (S.D.N.Y. 2007), aff'd, 313 Fed. App'x 369 (2d Cir. 2009) (Summary Order).

[8]     As part of this motion defendant also seeks discovery unrelated to informant identification from the government. For example, he points to the government's representation in its appeal of my release order ([55], p. 15) that when former co-defendant Bishop was arrested in Texas he was carrying a suitcase, which contained a toothbrush containing defendant's DNA. He seeks "all the documentation including pictures and scientific reports regarding the tooth brush". Parrinello Affirmation [84], ¶130. However, from the government description of the discovery produced, it appears that defendant has already been provided with that information. *See* Government's Response [96], pp. 2-3, ¶¶(e)-(l). Therefore, absent a more particularized showing, this portion of the motion is also denied.

The government is not required to provide early disclosure of the identities of informants unless "an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause". Roviaro v. United States, 353 U.S. 53, 60–61(1957). "The defendant bears the burden of showing the need for disclosure of an informant's identity . . . and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997).

"The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). The informant's testimony must be "shown to be material to the defense". Id. Disclosure is not required if a defendant fails to show that "the testimony of the informant would . . . [be] of even marginal value to the defendant's case". Id. "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324.

Although defendant goes into great detail identifying the individuals he wants disclosed, even if these individuals were participants in and witnesses to the crimes charged, defendant is short on details concerning why disclosure of their identities is material to determining his guilt or innocence. See United States v. Boone, 2003 WL 841088, *6 (S.D.N.Y. 2003) ("[m]ere speculation . . . that the informer may possibly be of some assistance does not overcome the strong public interest in protecting informants"). Compare with DiBlasio v. Keane,

932 F.2d 1038, 1043 (2d Cir. 1991) (disclosure required where the defendant introduced evidence that, if credited, would establish an entrapment defense and where the informant was only witness who could corroborate that defense). Moreover, based on the government's representation that it has video evidence that an unknown individual attempted to kill a cooperator in this case ([55], p. 10), there is a legitimate basis to question the safety of the informants and witnesses should their identities be disclosed.

Defendant argues that if there are legitimate safety concerns, they can be mitigated by the "middle course" utilized in Saa. Parrinello Affirmation [84], ¶140. There, the district court accepted the government's safety concerns in denying the defendant's motion for disclosure of the identity of the confidential informant, but on appeal the Second Circuit concluded that the defendant had shown that the informant's potential testimony would have been material to her defense, and that the failure to disclose the informant's identity was an error. 859 F.2d at 1073-74. It explained that given the materiality of the information, "a middle course could have been considered, such as having the Government produce [the informant] for an *in camera* meeting with defense counsel and the court". Id. at 1074-75.

However, even if that was a viable option here,[9] defendant has not made the threshold showing that the disclosure is material to his defense. Therefore, this motion is denied.

---

[9]    "The 'middle course' the court discussed . . . was only appropriate because the informant's identity itself was not a source of material information for the defendant. The only material information that the informant in Saa could provide was whether the defendant had been present at certain events, and defendant's attorney was capable of questioning the informant about that issue with or without the aid of the defendant." Creighton v. City of New York, 2015 WL 8492754, *9 (S.D.N.Y. 2015).

### 13.     Motion for an Audibility Hearing

Defendant argues that "[i]f the Court allows the government to offer any audio evidence that allegedly contains defendant's voice", then an audibility hearing should be held. He also argues that he is "entitled to transcripts of the audio evidence prepared by the government well in advance of trial".  Parrinello Affirmation [84], ¶141.  Since neither party has identified any audio recording that the government will offer into evidence at trial, much less one that is allegedly inaudible, this portion of the motion is denied as premature, without prejudice to renewal.  United States v. Columbo, 2006 WL 2012511, *14 (S.D.N.Y. 2006).  To the extent that defendant seeks transcripts of any audio recordings prepared by the government, that issue is likewise denied, as premature, without prejudice.

### 14.     Motion to Strike Surplusage

Defendant moves pursuant to Rule 7(d) to strike a variety of alleged surplusage from the Second Superseding Indictment. Parrinello Supplemental Affirmation [92], ¶¶15-31. 55-56.  Since it has not yet been "determined whether the Indictment will be provided or read to the jury[,] [this]  motion[ ] [is] denied as premature, without prejudice to renewal at a later stage in the proceedings". United States v. Zemlyansky, 945 F. Supp. 2d 438, 485 (S.D.N.Y. 2013). *See also* United States v. Wilson, 493 F. Supp. 2d 364, 379 (E.D.N.Y. 2006) ("it is premature to rule on th[e] motion [to strike suplusage] before the Government presents its evidence").

### 15.     Motion Directed at the Forfeiture Allegations

Although it is not evident what relief, if any, defendant is seeking with respect to the Forfeiture Allegations, his Supplemental Motion challenges whether the items allegedly

subject to forfeiture are connected to the alleged criminal conduct. Parrinello Supplemental Affirmation [92], ¶¶49-54. Pursuant to Rule 32.2(b)(1), the determination of what property is subject to forfeiture is triggered only upon a guilty verdict or acceptance of a plea of guilty. Therefore, this motion is denied as premature. *See* <u>United States v. Norris</u>, 2010 WL 11463301, *2 (N.D.N.Y. 2010).

### 16.     Motion for Leave to File Additional Motions

Defendant reserves his right to file additional supplemental motions. Parrinello Affirmation [84], ¶156; Parrinello Supplemental Affirmation [92], ¶58. Specifically, he points to the government's belated production of discovery – five days past the deadline – and the failure to provide a sufficiently particularized Rule 12(b)(4)(B) notice. Parrinello Supplemental Affirmation [92], ¶58. While defendant may be able to establish good cause for why a particular motion was not timely filed, at this point – without identification of any particular motion he seeks to file – this issue is premature. Therefore, this motion is denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. *See* Rule 12(c)(3).

### B.     Government's Cross-Motion for Reciprocal Discovery

The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b), including reports of examinations and tests. Government's Response [96], p. 30. Additionally, it seeks a summary of any testimony that the defendant intends to use under Fed. R. Evid. 702, 703, or 705 at trial. <u>Id</u>. Since defendant does not oppose this motion, it is granted.

## CONCLUSION

For these reasons, I recommend that defendant's motions to suppress be denied; and I further order the remaining portions of defendant's pretrial motions [84, 92, 97] are granted in part and denied in part as set forth above, and that the government's cross-motion for reciprocal discovery (government's Response [96], p. 30) is granted.

Unless otherwise ordered by Judge Wolford, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by November 13, 2017. Any requests for extension of this deadline must be made to Judge Wolford. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the

district judge's refusal to consider the objection.

Dated:    October 30, 2017


                                            /s/ Jeremiah J. McCarthy
                                           JEREMIAH J. MCCARTHY
                                            United States Magistrate Judge