UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANTWAN HUGLEY,

Defendant.

**DECISION AND ORDER**

1:15-CR-00115 EAW

## I. INTRODUCTION

Pending before the Court is a motion filed by defendant Antwan Hugley (hereinafter "Defendant") for release from custody pending his sentencing in this matter due to the COVID-19 pandemic.[1] (Dkt. 141). For the reasons set forth below, Defendant's motion is denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant and co-defendant Trammel Bishop were originally charged with cocaine trafficking crimes by an Indictment returned by a grand jury on June 5, 2015. (Dkt. 1). The case proceeded against Mr. Bishop, but Defendant was not arrested until June 29, 2016. (Dkt. 47). After his arrest, the magistrate judge granted Defendant's request for release on conditions, but this Court reversed that decision on an appeal by the

[1] On March 13, 2020, President Trump declared a National Emergency concerning COVID-19. Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020). According to the World Health Organization's website, as of May 26, 2020, there were 5,370,375 confirmed cases of COVID-19 worldwide, with 344,454 confirmed deaths. *See Coronavirus (COVID-19)*, World Health Org., https://covid19.who.int/ (last visited May 26, 2020).

Government, concluding that the Government established both a risk of danger and flight and that no condition or combination of conditions could reasonably protect against those risks. (Dkt. 65). The Court's decision was based, in part, on evidence proffered by the Government concerning Defendant's fugitive status, use of a false identity, and his arrest at Walt Disney World's Animal Kingdom theme park in Orlando, Florida, on June 29, 2016, after an extensive year-long manhunt. (*See generally* Dkt. 55).

A Superseding Indictment was returned on March 16, 2017 (Dkt. 86), after which Defendant again sought his release before the magistrate judge, but that request was denied (Dkt. 90). On June 1, 2017, a seven-count Second Superseding Indictment was returned, charging Defendant with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846; attempted possession of 500 grams or more of cocaine with the intent to distribute in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2; felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2; attempted possession of 500 grams or more of cocaine with the intent to distribute in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; and identity theft in violation of 18 U.S.C. §§ 1028(a)(7) and 1028(b)(3)(A). (Dkt. 93).

On May 10, 2018, Defendant appeared before the undersigned and pleaded guilty pursuant to a plea agreement to Counts 1 and 3 of the Second Superseding Indictment charging conspiracy to possess with intent to distribute and to distribute five kilograms or

more of cocaine in violation of 21 U.S.C. § 846, and possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (Dkt. 118). Consistent with the plea agreement, the Presentence Investigation Report ("PSR") has calculated a recommended prison sentence under the Sentencing Guidelines of 228 to 270 months. (Dkt. 126 at ¶¶ 4, 73-75). Following his plea, Defendant was incarcerated at the Livingston County Jail in Geneseo, New York (Dkt. 141 ¶ 9), and is presently confined at the Northeast Ohio Correctional Center ("NOCC") in Youngstown, Ohio (*id.* at ¶ 12). Defendant's sentencing was originally scheduled for April 10, 2019. (Dkt. 124). The Court granted a number of requests for adjournment by both parties (Dkt. 129; Dkt. 132; Dkt. 133; Dkt. 134; Dkt. 135; Dkt. 136; Dkt. 137; Dkt. 138; Dkt. 139), as well as the last adjournment in accordance with the March 13, 2020, and March 18, 2020, General Orders signed by Chief Judge Frank P. Geraci, Jr. in light of the COVID-19 pandemic (Dkt. 140). Defendant's sentencing is presently scheduled for June 22, 2020. (*Id.*).

Defendant now brings a motion to be released on conditions pending sentencing. (Dkt. 141). Defendant contends that his request for release is justified by, among other reasons: the COVID-19 pandemic; his diagnoses of sarcoid mediastinal lymphadenopathy (enlargement of the lymph nodes between the lungs and heart), restrictive lung disease, and obstructive lung disease; and his placement at NOCC which he argues has well-documented struggles in trying to contain the spread of the virus. (*Id.* at ¶¶ 13-21). Defendant further argues that "there is a distinct possibility" that he will be sentenced to time served. (*Id.* at ¶ 25).

The Government filed its response on May 8, 2020. (Dkt. 143). The Court ordered the Government to file a supplement to its response setting forth its position on whether Defendant will be eligible for a sentence of time served (Dkt. 144), which the Government filed under seal on May 12, 2020 (Dkt. 148). The Government contends that Defendant poses a significant risk of flight and has a history of ignoring court orders; provides no medical information to support his argument that he is "most-at-risk"; and outlines the steps undertaken by CoreCivic, the operator of NOCC, to control the spread of COVID-19. (Dkt. 143 at 2-7). Likewise, in a memorandum submitted to the Court on May 1, 2020, and copied to all counsel, the United States Probation Office ("USPO") communicated its opposition to the motion.

## III. LEGAL STANDARD AND ANALYSIS

Because of the nature of Defendant's convictions, he must establish the following in order to justify his release pending sentencing: (1) by clear and convincing evidence that he is not likely to flee; (2) by clear and convincing evidence that he does not pose a danger to any other person or the community; and (3) that exceptional reasons are clearly shown warranting his release. *United States v. Harris*, 192 F. Supp. 3d 337, 347 (W.D.N.Y. 2016).[2]

[2] Alternatively, a defendant convicted of the crimes that Defendant pleaded guilty to may meet his burden to be released after conviction if in addition to establishing that he is not a flight risk or danger, "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person. . . ." 18 U.S.C. § 3143(a)(2)(A)(ii). Because the Government's filing on this issue is sealed (Dkt. 148), the Court will not get into the specifics in this Decision and Order, other than to indicate that this alternative basis for release has not been satisfied.

The exceptional circumstances relied upon by Defendant are the COVID-19 pandemic, his current medical condition, and the conditions at NOCC. The Court is cognizant of Defendant's medical concerns in light of the COVID-19 pandemic. Indeed, his diagnosed conditions of sarcoid mediastinal lymphadenopathy, restrictive lung disease, and obstructive lung disease appear to make him at higher risk for serious illness from COVID-19. *See Frequently Asked Questions: Higher Risk*, Ctrs. for Disease Control & Prevention (May 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Higher-Risk (listing people with chronic lung disease as high risk). While the Government cites to various preventative measures undertaken by NOCC (Dkt. 143 at 2-7), the reality is that prison settings present unique challenges in preventing the spread of disease, *see generally Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (describing overcrowded California prison system as "breeding grounds for disease"). Those challenges have proven to be particularly acute when dealing with COVID-19. *See Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *20-22 (D. Conn. May 12, 2020) (finding likelihood of success on Eighth Amendment claims based on conditions at FCI Danbury, where there was an active and serious outbreak of COVID-19, social distancing was not practical, and warden failed to consider transfers of medically vulnerable inmates in any meaningful way); *Wilson v. Williams*, __ F. Supp. 3d __, 2020 WL 1940882, at *2 (N.D. Ohio Apr. 22, 2020), *appeal filed*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 27, 2020) (outlining the ineffectiveness of the various procedures and protocols being implemented at FCI Elkton). Certainly, there are some gaps in Defendant's proof with respect to both his medical condition and the conditions at NOCC, and the Court would need to either

require supplemental submissions or conduct a hearing in order to resolve those issues. Nonetheless, for purposes of this motion, the Court will assume (without deciding) that the COVID-19 pandemic, Defendant's medical conditions, and the conditions at NOCC, establish exceptional circumstances.

However, the risks of flight and danger are fatal to Defendant's motion. As memorialized in greater detail in the transcript of the Court's findings with respect to its initial decision to detain Defendant, Defendant presents a significant flight risk and risk of danger, and no condition or combination of conditions could protect against those risks. The Court previously found that Defendant's risks of flight and danger justified his detention when the Government bore the burden of proof on those issues, and that conclusion has not changed now that Defendant bears the burden to establish by clear and convincing evidence that he does not present a risk of flight or danger.

Defendant was eventually apprehended by federal agents in June 2016 after a year-long manhunt that ended in Defendant's arrest at Walt Disney World's Animal Kingdom in Orlando, Florida. (*Id.* at ¶ 32). Defendant had also obtained a driver's license in a different name using a different social security number and set up bank accounts under his fraudulent identity. (*Id.* at ¶¶ 33-34; *see* Dkt. 93 at 4-5; Dkt. 143 at 2). Additionally, the bail report submitted by USPO in July 2016 characterized Defendant as having "an unsupervisable nature" as evidenced by his two prior probation revocations and two prior parole revocations, and the USPO's May 1, 2020, submission states that it continues to stand by its July 2016 assessment.

In addition, while the Court has by no means determined the ultimate sentence that will be imposed on Defendant, he is facing a significant prison sentence. The statutory sentencing range for Count 1 is 10 years to life in prison, and Count 3 carries a mandatory minimum sentence of 5 years in prison that must be imposed consecutive to any other sentence. (Dkt. 126 at ¶¶ 73-75). Both the plea agreement and the PSR calculated a recommended Guidelines sentence of 228 to 270 months' imprisonment. (*Id*. at ¶¶ 4, 73-75). In other words, "Defendant faces the prospect of a long imprisonment that very likely may make him reluctant to willingly submit to incarceration." *United States v. Scali*, No. 7:16-CR-466-(NSR), 2018 WL 3410015, at *2 (S.D.N.Y. July 12, 2018), *aff'd*, 738 F. App'x 32 (2d Cir. 2018). While Defendant contends he has been a "model prisoner" throughout his incarceration, his behavior while incarcerated does not outweigh the significant evidence that he is a flight risk and risk of danger. *See United States v. Paulino*, No. 19 CR. 54 (PGG), 2020 WL 1847914, at *6 (S.D.N.Y. Apr. 13, 2020) (denying motion for release before sentencing where the defendant claimed his treatment in prison "transformed his behavior" where "the Defendant has shown in past cases and in connection with the instant case that he is not susceptible to community supervision").

Moreover, the PSR reflects an extensive history of criminal activity, including four prior felony convictions and multiple violations of parole, resulting in a criminal history category of V. (Dkt. 126 at ¶¶ 55-72); *see United States v. Steward*, No. S1:20CR0052 (DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) (citing the defendant's "lengthy criminal record, including for violation of conditions of release and supervision on release" as a factor favoring detention). Defendant's history of criminal conduct and failing to obey

lawful court orders only further supports a conclusion that the risks of flight and danger justify his detention, as does Defendant's underlying offense conduct in this case depicting his extensive drug trafficking activities and guilty plea to possessing a firearm in furtherance of that drug trafficking activity.

As a result, even assuming that Defendant could establish the requisite exceptional circumstances, the Court cannot disregard the applicable standard under the Bail Reform Act requiring that Defendant also establish that he is not a flight risk or a danger. Here, Defendant cannot meet his burden, and accordingly, his motion for release must be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for release (Dkt. 141) is denied. The Court notes that in the event that Defendant desires to be sentenced sooner than the scheduled date of June 22, 2020, and/or in the event that Defendant desires to proceed to sentencing using remote methods, his counsel should file a request seeking that relief. Otherwise, sentencing will proceed as scheduled on June 22, 2020, unless the parties mutually request an adjournment.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: May 26, 2020
Rochester, New York